2012 WY 122

**BOARD OF PROFESSIONAL RESPONSIBILITY, Wyoming State Bar, Petitioner,**

v.

**Mia Mikesell SHIFRAR, Respondent.**

No. D–12–0005.

Supreme Court of Wyoming.

Sept. 12, 2012.

**ORDER OF DISBARMENT**

[¶ 1] **This matter** came before the Court upon a "Report and Recommendation for Disbarment," filed herein July 26, 2012, and an "Amended Report and Recommendation for Disbarment," filed herein August 17, 2012, by the Board of Professional Responsibility for the Wyoming State Bar. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, the Amended Report and Recommendation, and the file, finds that the Amended Report and Recommendation for Disbarment should be approved, confirmed, and adopted by the Court. It is, therefore,

[¶ 2] **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Amended Report and Recommendation for

Disbarment, a copy of which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3] **ADJUDGED AND ORDERED** that, effective this date, the Respondent, Mia Mikesell Shifrar, shall be, and hereby is, disbarred from the practice of law in this state; and it is further

[¶ 4] **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mia Mikesell Shifrar, shall reimburse the Wyoming State Bar the amount of $2,612.28, representing the costs incurred in handling this matter, as well as pay an administrative fee of $500.00. Mia Mikesell Shifrar shall pay the total amount of $3,112.28 to the Clerk of the Board of Professional Responsibility on or before November 30, 2012; and it is further

[¶ 5] **ORDERED** that, pursuant to Section 4(c) of the Disciplinary Code for the Wyoming State Bar, Mia Mikesell Shifrar shall make restitution of $37,067.63 to the Estate of Leona Dorothy Spratt and also make restitution of $1,000 to James Spratt. Such payments shall be made in cash or certified funds; and it is further

[¶ 6] **ORDERED** that Respondent shall comply with Section 22 of the Disciplinary Code for the Wyoming State Bar. That Section governs the duties of disbarred and suspended attorneys; and it is further

[¶ 7] **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Disbarment, along with the incorporated Amended Report and Recommendation for Disbarment, shall be published in the Pacific Reporter; and it is further

[¶ 8] **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the Amended Report and Recommendation for Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶ 9] **ORDERED** that the Clerk of this Court cause a copy of the Order of Disbarment to be served upon the Respondent, Mia Mikesell Shifrar; and it is further

[¶ 10] **ORDERED** that the Clerk of this Court transmit a copy of this Order of Disbarment to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

[¶ 11] **DATED** this 12th day of September, 2012.

BY THE COURT:
/s/ MARILYN S. KITE
Chief Justice

Attachment

## BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY

## WYOMING STATE BAR

In the matter of MIA MIKESELL SHIFRAR, WSB # 6–3548, Respondent.

WSB No. 2012–023

## AMENDED REPORT AND RECOMMENDATION FOR DISBARMENT

THIS MATTER having come on for hearing on the 27th day of June, 2012, at the Holiday Inn East, 721 Granite Peak Drive, Casper, Wyoming, before the Board of Professional Responsibility, and the Wyoming State Bar appearing by and through Mark W. Gifford, Bar Counsel, and Respondent appearing in person, and the Board having heard the testimony of witnesses and having reviewed the exhibits received into evidence at the hearing, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS:

### *FINDINGS OF FACT*

1. Respondent has been licensed to practice law in the State of Wyoming since 2001, and has maintained, at all times relevant to this proceeding, a practice in Sheridan County, Wyoming.

2. In June 2011, Respondent entered into a Legal Fee Agreement pursuant to which Respondent undertook to represent James Spratt "in being the Personal Representative of Leona Dorothy Spratt." Mr. Spratt paid Respondent a "flat fee" of $1,000.00 in ad-

vance. Leona Dorothy Spratt had passed away on August 22, 2010, and was survived by three adult children, James Spratt, Tracy Spratt and Nathan Spratt.

3. On July 12, 2011, Respondent prepared, signed and filed a "Petition for Probate of Will and Appointment of Personal Representative" in the Fourth Judicial District Court, Johnson County, Wyoming, in *The Matter of the Estate of Leona Dorothy Spratt*, Probate No.2011–10. As a result of said petition, James Spratt was appointed Personal Representative of his mother's Estate, and Letters Testamentary were issued.

4. On August 9, 2011, Respondent prepared, signed and filed a "Petition for Order Approving Sale of Real Property" in the Leona Dorothy Spratt probate, seeking the Court's authorization to sell Mrs. Spratt's former residence, located at 170 Balsam, Buffalo, Wyoming. On August 9, 2011, the Court, acting through Christopher M. Wages, District Court Commissioner, entered an order approving the sale of the house.

5. On or about August 18, 2011, the house sale was closed, yielding net proceeds in the amount of $37,064.92. Respondent received a check for said amount, and deposited it into her IOLTA trust account on September 1, 2011.

6. Respondent later received a small check for interest accumulated on the house sale escrow in the amount of $2.71. This she deposited into her IOLTA trust account on September 13, 2011. Thus, the total funds held in Respondent's IOLTA trust account for the benefit of the Spratt estate, as of September 13, 2011, was $37,067.63.

7. In February of 2012, Bar Counsel received a complaint from James Spratt, who alleged that he had paid Respondent "up front" to probate the estate, his mother's house had been sold, and Respondent was holding the proceeds from the sale. Mr. Spratt also alleged that Respondent was failing to return multiple calls. Mr. Spratt alleged that he had terminated Respondent's representation in December of 2011, but that Respondent was not cooperating in transferring the file to replacement counsel.

8. On April 5, 2012, Buffalo lawyer Tucker Ruby entered an appearance in the probate. On April 9, 2012, Respondent delivered to Mr. Ruby a check drawn on Respondent's IOLTA account in the amount of $37,067.63, dated December 27, 2011, and made payable to "Estate of Leona Spratt."

9. On April 12, 2012, Bar Counsel served a Formal Charge upon Respondent by certified mail, return receipt requested. In the Formal Charge, it was alleged that Respondent's conduct violated Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees) and 1.15 (safekeeping property) in Respondent's representation of James Spratt. It was further alleged that Respondent had failed to timely respond to a request from Bar Counsel, in violation of Section 2(c) of the Disciplinary Code for the Wyoming State Bar.

10. On April 13, 2012, Respondent signed the certified mail return receipt for the Formal Charge.

11. On April 17, 2012, Bar Counsel served combined interrogatories and requests for production of documents upon Respondent.

12. On April 24, 2012, Respondent served a Response to the Formal Charge, in which Respondent stated, "Respondent admits that she did send Mr. Ruby a check for $37,067.63 for the Estate of Leona Spratt and requested that it be cashed immediately." Respondent admitted that she had violated Section 2(c) of the Disciplinary Code, but denied that she had violated any Rules of Professional Conduct.

13. On May 7, 2012, Plaintiff served a response to Bar Counsel's written discovery request. The response was deficient, most notably, in failing to provide any documents in response to Bar Counsel's request for production of "copies of all documents required by Rule 1.15(g) of the Rules of Professional Conduct."

14. On May 8, 2012, a telephone scheduling conference was held, attended by Bar Counsel, Respondent, and Jenifer E. Scoggin, BPR Chair. Following the scheduling conference, an Order was entered and served

upon Respondent setting certain deadlines and dates, including a June 27, 2012, hearing date, and advising Respondent of the time and place of the hearing.

15. After the Formal Charge was filed, Mr. Ruby, replacement counsel for Respondent, transmitted Respondent's IOLTA check in the amount of $37,067.63 to Mr. Spratt, who, following deposit of the check into his bank account on May 16, 2012, learned that the check was returned for insufficient funds.

16. After learning that the check had bounced, Bar Counsel informed Respondent of the new development and requested that Respondent stipulate to an Order granting Bar Counsel leave to file an amended formal charge. Respondent did so stipulate, and on May 23, 2012, BPR Chair Jenifer E. Scoggin signed an Order for leave to file an Amended Formal Charge.

17. The Amended Formal Charge was filed and served upon Respondent by mail on May 24, 2012. Respondent did not file a response to the Amended Formal Charge.

18. On June 4, 2012, Bar Counsel filed and served a motion to compel discovery with respect to Respondent's deficient discovery responses. Respondent did not file a response to the motion. On June 18, 2012, a notice was served upon Respondent via email and U.S. mail, notifying Respondent that a telephone hearing on Bar Counsel's motion to compel would be held on June 21, 2012.

19. On June 18, 2012, Bar Counsel received the U.S. Bank records relating to Respondent's IOLTA trust account, pursuant to a subpoena earlier served on the bank. Those records reveal the following:

a. Respondent deposited the $37,064.92 proceeds from the sale of the Spratt home into her IOLTA trust account on September 1, 2011.

b. On September 20, 2011, Respondent wrote herself check No. 246 on Respondent's IOLTA trust account. The amount of the check was $5,000.00 and it was indicated on the check that it was "for Spratt wages." This check cleared the bank on September 21, 2011.

c. On October 25, 2011, Respondent wrote herself check No. 258 on Respondent's IOLTA trust account. The amount of the check was $1,000.00 and it was indicated on the check that it was "for Spratt." This check cleared the bank on October 25, 2011.

d. On November 1, 2011, Respondent wrote herself check No. 259 on Respondent's IOLTA trust account. The amount of the check was $1,000.00 and it was indicated on the check that it was "for Spratt." This check cleared the bank on November 2, 2011.

e. On November 23, 2011, Respondent wrote herself check No. 652 on Respondent's IOLTA trust account. The amount of the check was $5,000.00 and it was indicated on the check that it was "for Spratt." This check cleared the bank on November 23, 2011.

f. On December 27, 2011, Respondent wrote check No. 656 on Respondent's IOLTA trust account. This check was made payable to the Estate of Leona Spratt in the amount of $37,067.63. This is the check that was returned to James Spratt for insufficient funds on May 16, 2012. As of December 27, 2011, Respondent had already diverted at least $12,000 to herself from the Spratt house sale proceeds. As of the date of this check, there was less than $20,000 in Respondent's IOLTA trust account.

g. On January 31, 2012, Respondent wrote herself check No. 659 on Respondent's IOLTA trust account. The amount of the check was $2,000.00 and it was indicated on the check that it was "for Spratt." This check cleared the bank on January 31, 2012.

h. The U.S. Bank records for Respondent's IOLTA trust account indicate that after September 1, 2011, Respondent wrote herself two other checks totaling $3,000. These two checks do not indicate they were "for Spratt."

i. It is not possible to determine from the U.S. Bank records alone what funds are in Respondent's IOLTA trust account, to whom they belong, or whether any of the disbursements were proper.

20. Respondent failed to call in for the June 21, 2012, telephone hearing on Bar Counsel's motion to compel discovery. BPR Chair Jenifer E. Scoggin presided and granted Bar Counsel's motion, ordering Respondent to fully comply with discovery on or before June 25, 2012. Respondent failed to comply with this order.

21. On June 26, 2012, Respondent was served with a subpoena compelling her attendance at the June 27, 2012, hearing. Respondent did appear and testified at the hearing. Her testimony established the following:

a. Before Respondent deposited the two house sale proceed checks into her IOLTA trust account in September 2011, there was $232.21 in the account. Respondent did not know to whom these funds belong.

b. Between September 2011 and May 31, 2012, Respondent made two additional deposits into her IOLTA trust account. The first was a $25,000 deposit made February 24, 2012, and represents insurance proceeds in a divorce case in which Respondent was representing one of the parties. Respondent promptly and appropriately paid the $25,000 insurance proceeds to the parties. The second deposit was made April 11, 2012, in the amount of $1,100.00. Respondent did not know to whom these funds belong.

c. As of the date of the June 27, 2012, disciplinary hearing, Respondent's IOLTA trust account had a balance of $15,974.81. Of that total, $1,332.21 ($232.21 plus $1,100.00) represents funds for which Respondent cannot account. The remainder, $14,642.60, is all that remains in Respondent's IOLTA trust account from the Spratt estate house sale proceeds.

d. Respondent improperly diverted the following funds from the Spratt estate to herself or applied them to other, improper uses.

| Check No. | Recipient/purpose of disbursement | Amount |
|---|---|---|
| 257 | Client/fee refund | $1,000.00 |
| 246 | Respondent | 5,000.00 |
| 258 | Respondent | 1,000.00 |
| 259 | Respondent | 1,000.00 |
| 651 | Client/IOLTA reimbursement | 1,500.00 |
| 652 | Respondent | 5,000.00 |
| 653 | Non–Spratt client cost advanced | 528.00 |
| 654 | Non–Spratt client cost advanced | 372.75 |
| 741 | Unidentified/ Christmas-related | 85.60 |
| 655 | Non–Spratt client cost advanced | 450.00 |
| 657 | Respondent | 2,000.00 |
| 658 | Client/refund of retainer | 1,000.00 |
| 681 | Non–Spratt client cost advanced | 70.00 |
| 682 | UPS Store/office expense | 86.47 |
| 659 | Respondent | 2,000.00 |
| 744 | Unidentified/purpose not identified | 120.00 |
| | Total | $21,212.82 |

e. Neither James Spratt nor the probate court authorized any of the foregoing disbursements, nor did Respondent inform Mr. Spratt that she had made them.

f. When asked why she wrote "Spratt" on some of the checks she wrote to herself, Respondent said she did not know.

g. Respondent admitted that none of the funds she paid out of her IOLTA account from the Spratt estate house sale proceeds was for legal fees or for costs advanced on behalf of the estate. Respondent could not answer the question why her diversion of those funds was not simply stealing from a client.

### CONCLUSIONS OF LAW

22. Bar Counsel's post-hearing motion to conform the pleadings to the evidence was granted.

23. The testimony and exhibits establish, by clear and convincing evidence, Respondent's violation of the following Rules of Professional Conduct for Attorneys at Law: Rule 1.4 (communication); Rule 1.5 (fees); and Rule 1.15 (safekeeping property); and Rule 8.4 (misconduct). The testimony and exhibits do not establish, by clear and convincing evidence, Respondent's violation of Rule 1.1 or Rule 1.3. Pursuant to Rule 19(c)(2) of the Disciplinary Code for the Wy-

oming State Bar, the charged violations of Rules 1.1 and 1.3 are dismissed.

■ 24. Respondent's breach of Rule 1.15 is clear. Respondent improperly diverted client funds to herself or used them to pay expenses or for other purposes not related to or for the benefit of her client.

■ 25. Respondent breached Rule 1.4 by not communicating with her client regarding her misappropriation of the client's funds.

■ 26. Respondent breached Rule 1.5 by charging her client an up-front flat fee for a matter in which attorney's fees can only be paid upon application to and approval of the probate court.

■ 27. Respondent breached Rule 8.4 by (a) violating the foregoing Rules of Professional Conduct; (b) committing criminal acts (in the opinion of the Board) that reflect adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and (c) engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

■ 28. In addition, the testimony and exhibits establish, by clear and convincing evidence, that Respondent failed to timely respond to a request from Bar Counsel, in violation of Section 2(c) of the Disciplinary Code for the Wyoming State Bar.

29. Standard 2.2 of the ABA Standards for Imposing Lawyer Sanctions states, "Disbarment terminates the individual's status as a lawyer."

30. Standard 3.0 provides, "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:

(a) the duty violated;

(b) the lawyer's mental state; and

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

31. The most serious misconduct engaged in by Respondent—the unauthorized diversion of client funds—is addressed in Section 4.0, "Violations of Duties Owed to Clients."

Standard 4.1, "Failure to Preserve the Client's Property," provides, in relevant part:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

32. Section 9.1 of the ABA Standards for Imposing Lawyer Sanctions provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating circumstances as "any considerations or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations or factors that may justify a reduction in the degree of discipline to be imposed."

33. The applicable aggravating factors are:

a. Section 9.22(b)-dishonest or selfish motive.

b. Section 9.22(d)-multiple offenses.

c. Section 9.22(e)-bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary agency.

d. Section 9.22(f)-submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

e. Section 9.22(g)-refusal to acknowledge wrongful nature of conduct;

f. Section 9.22(h)-vulnerability of victim;

g. Section 9.22(i)-substantial experience in the practice of law. Respondent was first admitted to practice in Wyoming in 2001;

h. Section 9.22(j)-indifference to making restitution;

i. Section 9.22(k)-illegal conduct.

34. There was no evidence presented of mitigating circumstances.

### RECOMMENDATION

■ WHEREFORE, the Board of Professional Responsibility recommends that the Wyoming Supreme Court:

1. Issue an Order disbarring Respondent;

2. Order Respondent to pay restitution to the Estate of Leona Dorothy Spratt in the amount of $37,067.63, and to James Spratt in the amount of $1,000, such payments to be made by Respondent in cash or certified funds;

3. Order Respondent to reimburse the Wyoming State Bar for all costs and expenses of prosecuting this matter and for the disciplinary proceeding in the amount of $2,612.28 as supported by the attached. Affidavit of Costs and Expenses; and

4. Order Respondent, pursuant to Rule 26(e) of the Disciplinary Code for the Wyoming State Bar, to pay an administrative fee of $500.00.

DATED this 15th day of August, 2012.

/s/ Jenifer E. Scoggin
Jenifer E. Scoggin, Chair
Board of Professional Responsibility
Wyoming State Bar